UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JOHN S. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:05-cv-0017 AS |
| ) | |
| LIFETOUCH NATIONAL ) | |
| SCHOOL STUDIOS, INC., ) | |
| ) | |
| Defendant. | |

**MEMORANDUM, OPINION, AND ORDER**

This matter is before the Court on three separate motions filed by Defendant Lifetouch National School Studios, Inc.: (1) motion summary judgment (Docket No. 14); (2) motion to strike (Docket No. 34); and (3) motion to strike (Docket No. 38). Oral arguments were heard on these motion in Lafayette, Indiana on January 20, 2006, and the issues have been fully briefed. For the reasons set forth below, the motions are **GRANTED**.

I. Introduction

The Plaintiff, John S. Taylor ("Taylor") has alleged that his former employer, Lifetouch National School Studios, Inc. ("Lifetouch"), breached a contractual duty to pay him for a period of thirteen (13) months beyond the termination of his employment at Lifetouch and that Lifetouch breached a contractual duty to provide him with employment benefits including health insurance and participation in the Employer Stock Ownership Plan ("ESOP"). Taylor seeks compensatory damages and costs.

II.  Jurisdiction

The Court has original jurisdiction, pursuant to 28 U.S.C. § 1332, because this cause of action involves citizens of different states[1] and because the amount in controversy exceeds $75,000.00.

III.  Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998).  After affording the parties adequate time for discovery, a court must grant summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor.  *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th

---

[1] John S. Taylor is a citizen and resident of the State of Indiana.  Lifetouch National School Studios, Inc. is a corporation organized under the laws of the State of Minnesota and has its principal place of business in Minnesota.

Cir. 1998), *reh'g denied*. A question of material fact is a question which will be outcome- determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. The moving party may discharge this initial burden by demonstrating that there is insufficient evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The moving party may also choose to support its motion for summary judgment with affidavits and other admissible material, thereby shifting the burden to the nonmoving party to demonstrate that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977). The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996). However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 577; 106 S. Ct. at 1351. Rather, he must come forward with "specific facts" showing

that there is a genuine issue for trial. *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).

IV. Facts

In 1999, Lifetouch purchased Olan Mills School Portraits ("Olan Mills"), a competitor engaged in the same business. (Taylor Aff. at ¶ 2; Weisse Aff. at ¶ 4). At the time of the purchase, Taylor worked for Olan Mills as a Territory Manager, and on February 1, 1999, as a part of the purchase, Lifetouch hired Taylor as a Territory Manager. (Taylor Aff. at ¶ 2; Weisse Aff. at ¶ 4). The terms and conditions of Taylor's employment at Lifetouch as a Territory Manager were memorialized in a "Territory Manager Employment Agreement."[2] (Weisse Aff. at ¶ 5, Ex. 1).

In September, 2002, Taylor met with Lifetouch Regional Sales Manager Tom Weisse ("Weisse") to discuss his performance. (Weisse Aff. at ¶ 6). Weisse indicated to Taylor that his performance as Territory Manager was poor and that his territory had experienced a decreased market share, increased territory losses, and declining territory sales. (Weisse Aff. at ¶ 6). Weisse and Taylor agreed to several specific targets to be achieved in order for Taylor to continue his employment as Territory Manager. (Weisse Aff. at ¶ 7). Taylor resigned his employment as Territory Manager effective January 1, 2003. (Weisse Aff. at ¶ 9).

During that same month, Taylor transitioned to a Sales Representative position, effective February 1, 2003. Taylor and Lifetouch memorialized the agreement to change

---

[2]The Territory Manager Employment Agreement is dated February 1, 1999. (Weisse Aff. at ¶ 5, Ex. 1).

4

Taylor's employment status from Territory Manager to Sales Representative in a Transition Agreement.[3]  In the Transition Agreement, Taylor acknowledged that he received "all compensation earned as Territory Manager, including but not limited to commissions" and that "the XL Territory that he managed is in a debt position in the amount of $68,000.00" (Transition Agreement at ¶ 2-3).  The Transition Agreement also stated that after the effective date, Taylor's employment relationship with Lifetouch shall be governed by the terms of a Sales Representative Agreement.  (Transition Agreement at ¶ 10).

The Sales Representative Employment Agreement delineated the terms and conditions of Taylor's employment at Lifetouch as a Sales Representative, and was effective January 17, 2003.  The Sales Representative Employment Agreement provided, in relevant part:

> 1. **Responsibility**.  As a Sales Representative, you will be responsible for selling Lifetouch products and services as directed by your territory manager.  If directed by your territory manager, you may also be responsible for taking photographs.  Products and services may include portraits, memory books, yearbooks and other portrait and related products and services to students, schools, organizations, leagues, clubs and other school and sports related organizations.  You will also be responsible for performing administrative services in connection with your selling efforts.  You will direct your sales efforts to the customers and potential customers assigned to you by your territory manager.  The Company retains the right and authority in its sole discretion to change the customers and potential customers assigned to you and to add or remove products and services from

---

[3]The Transition Agreement was signed by Taylor on January 17, 2003 and by Ross Larson, Director of Sales in Lifetouch's Northeast Area, on January 24, 2003.

5

>   your assigned responsibility.  You are responsible for understanding and complying with all current Lifetouch policies, procedures, rules, regulations and guidelines.  Lifetouch may modify or revoke policies, procedures, rules and regulations from time to time in its sole discretion.  You agree to use the Lifetouch name ad reputation exclusively for the benefit of Lifetouch, in the manner directed by Lifetouch and to at all times conduct yourself and Lifetouch business in a lawful and respectable manner.
>
>   2. **Duty of Loyalty**.  As an employee of Lifetouch, you are expected to perform your duties and conduct yourself in a lawful and respectable manner in the best interests of the Company.  ~~You will devote your full working time and attention exclusively to your responsibilities as a sales representative for Lifetouch products and services~~.[4]  You will not under any circumstances carry out any other photography or yearbook/memorybook-related business or any other business providing products or services to the Lifetouch customers you serve or that will interfere with your duty of loyalty to Lifetouch.

(Sales Representative Employment Agreement at ¶ 1-2).  The parties agreed that Taylor's employment with Lifetouch was at-will and that either Lifetouch or Taylor could terminate employment "at any time for any reason, with or without cause and with or without notice."  (Sales Representative Employment Agreement at ¶ 9).  Finally, the parties agreed that only paragraphs 8, 10, 11, 12, 13, and 15 of the Sales Representative Employment Agreement would survive the termination of Taylor's employment by Lifetouch.  Those paragraphs provide for protection of confidential, proprietary and trade secret information (¶ 8), the return of property (¶ 10), injunctive relief (¶ 11), accounting/return of profits (¶ 12), portrait release (¶ 13), and nondisparagement (¶ 15).

Taylor's employment with Lifetouch ended on December 27, 2003.  (Larson Aff.

---

[4]The parties struck out and initialed this provision in the Sales Representative Employment Agreement.

at ¶ 6). Taylor did not provide any services for Lifetouch after December 27, 2003, and Taylor did not receive any pay from Lifetouch after December 27, 2003. (Larson Aff. at ¶ 6; Taylor Dep. at 120:15-28 and 111:19 through 112:11).

V. <u>Motion to Strike (Docket No. 34)</u>

Before the Court can rule on Defendant's Motion for Summary Judgment it must address Defendant's Motion to Strike. Lifetouch filed its Motion to Strike, pursuant to N.D. Ind. L.R. 7.1 and 56.1(d). Specifically, Lifetouch requested that this Court strike portions of exhibits attached to Plaintiff's designation of materials in opposition to Defendant's Motion for Summary Judgment and strike any reference to those materials in the Plaintiff's Memorandum in Support of His Response to Defendant's Motion for Summary Judgment. The exhibits that Defendant requests be stricken are as follows:

1. The following statements from ¶ 10 of Exhibit "A," Affidavit of John Taylor:

   their agreement with me is similar to agreements used with other Lifetouch employees who were being transitioned to either new positions or into retirement. For instance, John Yount, another Lifetouch employee who was hired away from Olan Mills like me, was paid for five (5) years just to be out of Lifetouch's way and not compete against Lifetouch. In addition, Gary McClurg, another Lifetouch employee, was paid for several years while he was to assist with rebooking his business with Lifetouch, and he performed little, if any, duties after his first year;

2. The following portions of Exhibit "I," Deposition of Matt Grzegorzewski: 35: 20-25; 36: 1-9; 38: 17-25; 49: 8-25; and 50: 1-14.

Local Rule 7.1(a) states: "Failure to file a response or reply within the time

prescribed [by the Rules] may subject the motion to summary ruling." This Motion was filed on November 18, 2005. The Plaintiff did not respond. Accordingly, the Defendant's Motion to Strike is **GRANTED**.

VI. <u>Motion to Strike (Docket No. 38)</u>

On December 2, 2005, Lifetouch filed a motion to strike, or alternatively to file a surreply to Plaintiff's reply brief on its summary judgment motion (Docket No. 38). Lifetouch contends that because Plaintiff did not seek or obtain leave of the Court, because Plaintiff did not articulate any just cause for his need to file a surreply, and because Lifetouch did not designate any additional evidence in its reply and confined the arguments contained in its reply to the arguments and evidence designated by the Plaintiff in his opposition to summary judgment, Plaintiff's surreply should be stricken.

Local Rule 7.1(a) provides for the filing of a supporting brief or motion, a response, and a reply. Local Rule 7.1(c) sets forth the time frame within which parties must file their response and reply briefs, and Local Rules 7.1(b) and (f) set forth the page limits for these briefs. Local Rule 7.1 states that "[a] reply brief must be limited to matters in reply" to the response brief. Local Rule 7.1 grants no provision for the filing of a surreply and represents the drafter's conclusion that, ordinarily, a brief, response, and reply provide a sufficient mechanism for the resolution of matters in this district. The ability to file a surreply may be gained only by leave of the court and by the showing of some factor that justifies deviation from the rule. *Goltz v. University of Notre Dame du*

8

*Lac*, 177 F.R.D. 638, 641 n. 3 (N.D. Ind. 1997) (collecting cases that describe the standard necessary to justify supplemental briefing).

Plaintiff did not request permission for nor did this Court authorize the filing of a surreply brief. The Plaintiff's submission includes arguments which are new and not made in response to Lifetouch's reply brief in contradiction to Civil Local Rule 7.1(f). *See Miami Valley Contractors, Inc. v. Town of Sunman*, 960 F.Supp. 1366, 1370 (S.D. Ind. 1997) ("Seeking permission is not a mere technicality to be overlooked or indulged by the Court."). Accordingly, Plaintiff's "Surreply Memorandum in Support of His Response to Defendant's Motion for Summary Judgment" (Docket No. 37) is stricken.

VII. Discussion

    A. Choice of Law

An initial question which the Court must decide concerns the law which should govern this dispute. It is well-settled that a federal court sitting in diversity jurisdiction is to apply the law of the forum state to determine applicable substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In *Klaxton Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), the Supreme Court amended this ruling to address conflicts in state law. The Court held that when there is a difference in the substantive laws of states involved in an action, such that the difference in the laws would affect the outcome of the case, the court is to apply the choice of law rule from the forum state. *Klaxton*, 313 U.S. at 496. *See also Griffin v. McCoach*, 313 U.S. 498, 506 (1941); *Sound of Music Co. v. Minnesota*

*Mining & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007). In actions on contract where the parties have not made an effective choice of law, Indiana's choice of law rule calls for applying the law of the forum with the most intimate contacts to the facts. *American Employers Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1178 (Ind. App. 2005).

Here, however, the parties have made an effective choice of law. *See General Motors Corp v. Northrop Corp.*, 685 N.E.2d 127, 135 (Ind. Ct. App. 1997) (stating that where parties include language to the effect that one or the other body of law will apply to govern all disputes arising under the contract, those choice of law clauses are valid). The Transition Agreement entered into by the parties provides, at paragraph 10, that "[a]ll rights and obligations under this Agreement are governed by the laws of the State of Minnesota." (Transition Agreement, at ¶ 10). The parties agree that the Court should apply Minnesota law to determine the parties' rights under the Sales Representative Agreement. *See* Defendant's Brief at 8-9; Plaintiff's Response at 14. Accordingly, the Court finds that Minnesota law governs this contractual dispute.

*B. Compensation and Benefits*

The Court must determine whether Taylor is entitled to pay and benefits for the time period from December 27, 2003 through the end of December 31, 2004, in which he performed no duties for Lifetouch. Taylor asserts that the term of the Sales Representative Employment Agreement which states that Taylor is to be paid "through pay period 14 of fiscal 2004" is ambiguous. Specifically, Taylor claims that term is ambiguous because

10

Taylor claims it refers to July 1, 2004 through June 30, 2005 (Taylor Aff. at ¶ 7) and Lifetouch claims that it refers to July 1, 2003 through June 30, 2004 (Lifetouch's Answer at 2).  See Plaintiff's Response at 14.

Under Minnesota law, the interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, is a question of fact.  *City of Virginia v. Northland Office Props. Ltd. P'ship*, 465 N.W.2d 424, 427 (Minn. App. 1991), *review denied* (Minn. Apr. 18, 1991).  A contract is ambiguous if, "based upon its language alone, it is reasonably susceptible of more than one interpretation." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997).  If, however, a contract is clear and unambiguous, the language contained in the contract must be given its plain and ordinary meaning.  *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-47 (Minn. 2003).  When construing an ambiguous contract, the court must give effect to the intent of the parties and may consider extrinsic evidence to determine that intent.  *Ecolab, Inc. v. Gartland*, 537 N.W.2d 291, 295 (Minn. App. 1995).

The plain language of the Sales Representative Employment Agreement provides that Taylor's employment was terminable at-will and "at any time for any reason, with or without cause and with or without notice."  (Sales Representative Employment Agreement at ¶ 9).  Taylor concedes that the Sales Representative Employment Agreement was "terminable at-will by the provisions contained in paragraph 9."  Plaintiff's Response at 3.  Accordingly, it is undisputed that Lifetouch had the right to

11

terminate Taylor's employment for any reason, with or without notice.[5]

Taylor attempts to create an issue of fact by asserting that his employment with Lifetouch has never been terminated. Plaintiff's Response at 3-4. Specifically, Taylor contends that he is still employed at Lifetouch because no one told him that his employment was terminated. Taylor also argues that there are questions of fact regarding his duties as a Lifetouch employee and whether Lifetouch entered into agreements with other employees under which the employees were paid to "stay out of the way." Plaintiff's Response at 8-11.

Lifetouch has met its initial burden of demonstrating the absence of a genuine issue of material fact regarding the termination of Taylor's employment. Ross Larson stated that on "December 27, 2003 Taylor terminated his employment as a Sales Representative with Lifetouch effective December 28, 2003. Consistent with the Sales Representative Agreement, Lifetouch paid Taylor his final pay on January 2, 2004, compensating him for all hours Taylor worked and all packages sold by Taylor." (Larson Aff. at ¶¶ 6, 7). Lifetouch's Director of Human Resources, Pamela H. Offerman, stated, "John Taylor was employed by Lifetouch from February 1, 1999 until December 27,

---

[5]Because Lifetouch had the right to terminate Taylor's employment for any reason, with or without notice, whether pay period 14 of fiscal year 2004 would have been in December 2003 or December 2004 is immaterial. The issue here is whether Taylor's employment was terminated in December 2003 and, accordingly, does not concern the obligations Lifetouch may have owed Taylor if his employed had not been terminated. Even if Lifetouch promised to pay Taylor any wages and benefits in 2004, that promise did not survive the termination of Taylor's employment on December 27, 2003. *See* page 14 *infra*.

2003." (Offerman Aff. at ¶ 7). Taylor himself admitted that Lifetouch stopped paying him on or about December 27, 2003 and that he did not perform any work for Lifetouch in 2004. (Taylor Dep. at 112:5-11 and 113:9-25). Taylor further stated that he received a COBRA notice from Lifetouch in January 2004. (Taylor Dep. at 121:12 through 122:4).

Taylor has failed to carry his burden of demonstrating that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986). Taylor merely asserts that Larson's affidavit is uncorroborated, denies terminating the agreement, and denies receiving any notice[6] from Lifetouch that Lifetouch was terminating the agreement. Taylor relies only on his own conclusory statements and has failed to come forward with specific facts showing that his employment was not terminated in December, 2003. *See Matsushita*, 475 U.S. at 577. Taylor's mere allegation that his employment was not terminated in December 2003 is insufficient to create a genuine issue of fact because it is not based on personal knowledge[7] and has no other support in the record. *See Caulfield & Associates, Inc. v. Litho Products, Inc.*, 155 F.3d 883, 889 (7th Cir. 1998)(lack of personal knowledge is

---

[6] Lifetouch had no duty to provide notice to Taylor of its decision to terminate his employment. Taylor does not dispute the Sales Representative Employment Agreement was "terminable at-will by the provisions contained in paragraph 9." Plaintiff's Response at 3. Accordingly, it is undisputed that Lifetouch had the right to terminate Taylor's employment for any reason, with or without notice. Taylor's mere allegation –unsupported by any evidence – that he did not receive notice from Lifetouch does not create a genuine issue as to whether his employment was terminated.

[7] In contrast, Taylor has demonstrated a lack of knowledge regarding his termination. (*See* Taylor Dep. at 111:19 through 112:11).

13

insufficient to raise a genuine issue of fact in opposition to a motion for summary judgment).

Even if the Court determined that the language of the Sales Representative Employment Agreement is ambiguous, it would reach the same conclusion by applying external canons of contract construction. Under the doctrine of *expressio unius est exclusio alterius*, meaning "the expression of one thing implies the exclusion of all not expressed," the enumeration of clauses that survive Taylor's employment excludes clauses not listed. *See Colangelo v. Norwest Mortg., Inc.*, 598 N.W.2d 14, 17-18 (Minn. App. 1999). Here, the parties agreed that only paragraphs 8, 10, 11, 12, 13, and 15 of the Sales Representative Employment Agreement would survive the termination of Taylor's employment by Lifetouch. Because ¶ 3 of the Sales Representative Employment Agreement[8] was not included as one of the paragraphs which survived termination, Lifetouch's duty to pay Taylor a salary and Taylor's ability to participate in Lifetouch's employee benefit plans did not survive the termination of Taylor's employment.

   C.  *Prior Oral Understanding*

Taylor contends that a prior, oral understanding that he had with Larson should control rather than the written language of the Agreement. Interpretation of a contract is a question of law. *Alpha Real Estate v. Delta Dental Plan, Minn.*, 664 N.W.2d 303, 311

---

[8]Paragraph 3 of the Sales Representative Employment Agreement states:
3.  **Compensation**.  You will be paid for your services as described on the attached Exhibit A, as modified from time to time.

14

(Minn. 2003). The parol evidence rule "prohibits the admission of extrinsic evidence of . . . prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing." *Id*. at 312 (internal quotation marks omitted). And when an agreement between the parties has been reduced to writing, parol evidence is "ordinarily inadmissible to vary, contradict, or alter the written agreement." *Flynn v. Sawyer*, 272 N.W.2d 904, 907-08 (Minn. 1978). Whether a written agreement is integrated and therefore not subject to variance by parol evidence is an issue of law. *Apple Valley Red-E-Mix v. Mills-Winfield Eng'g Sales, Inc*., 436 N.W.2d 121, 123 (Minn. App. 1989), *review denied* (Minn. Apr. 26, 1989).

Here, the very detailed Sales Representative Employment Agreement sets forth the consideration Taylor agreed to provide Lifetouch in exchange for Lifetouch's promise to pay him while he was employed. *See* Sales Representative Employment Agreement at ¶ 1. The Sales Representative Employment Agreement makes no mention of any prior or contemporaneous oral agreements affecting the written agreement. Rather, the Sales Representative Employment Agreement indicates that it represents the full, integrated intent of the parties.[9] The Sales Representative Employment Agreement states in relevant

---

[9] Moreover, the fact that Lifetouch struck out provisions of the Sales Representative Employment Agreement which required Taylor to devote his full working time and attention exclusively to his responsibilities as a sales representative for Lifetouch products and services is further evidence that Lifetouch and Taylor intended the Sales Representative Employment Agreement to represent the entire employment agreement between the parties; if not, there would have been no need for the parties to alter the Sales Representative Employment Agreement to remove that requirement.

part:

> 16. **Prior Agreements and Modifications**.  This Agreement expressly supersedes any previous written or oral agreements between you and Lifetouch relating to employment, but does not eliminate any outstanding indebtedness.  It represents the complete understanding between you and Lifetouch and may only be modified by a written agreement signed by you and an officer of Lifetouch.

(Sales Representative Employment Agreement at ¶ 16).

The Court finds that the Sales Representative Employment Agreement is unambiguous.  Upon review of the circumstances surrounding the case, the Court finds that the Sales Representative Employment Agreement was fully integrated and meant to represent the entire employment agreement between the parties.  *See Borgersen v. Cardiovascular Systems, Inc.*, 729 N.W.2d 619, 625 (Minn. App. 2007).  Because Taylor's proffered construction – that his only duty under the Agreement was to "stay out of the way" – directly contradicts the plain language of paragraph 1, Taylor's construction is impermissible as a matter of law.  Taylor's oral conversation with Larson prior to his signing the Sales Representative Employment Agreement is inadmissible extrinsic evidence.

   D.  *Failure to Exhaust Administrative Remedies*

Taylor claims he is entitled to recover $77,189.02, the value of lost benefits, including health insurance benefits and lost participation in Lifetouch's Employee Stock Ownership Program. Taylor's claim for health insurance and participation in Lifetouch's Employee Stock Ownership Program ("ESOP") is controlled by the Employee Retirement

16

Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461 ("ERISA").  ERISA defines an "employee pension benefit plan" as "any plan, fund, or program which [is] established or maintained by an employer . . . that by its express terms or as a result of surrounding circumstances (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(A).  ERISA defines an "employee welfare benefit plan" as a plan that is "maintained for the purpose of providing its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits." 29 U.S.C. § 1002(1)(A).  Lifetouch's ESOP is a defined contribution pension plan, and Lifetouch's health and dental insurance plans are defined employee welfare benefit plans; therefore, Lifetouch's ESOP and health and dental insurance plans are ERISA-qualified plans. (Offerman Aff. at ¶ 6).

Exhaustion of an ERISA plan's available administrative remedies is a prerequisite to bringing suit under ERISA.  *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679 (7th Cir. 2002); *Doe v. Blue Cross & Blue Shield United of Wisc.*, 12 F.3d 869, 873 (7th Cir. 1997).  This exhaustion requirement does not apply "if there is a lack of meaningful access to review procedures . . . [or] if pursuing internal remedies would be

17

futile." *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005) (citations omitted).

Lifetouch contends that it is entitled to summary judgment on Taylor's benefits claim because Taylor failed to exhaust his contractual and administrative remedies under both ERISA-qualified plans. Taylor contends that he is not required to exhaust any remedies under the ESOP plan until the question of fact about the term of his Sales Representative Employment Agreement has been decided. (*See* Plaintiff's Response at 17).

The Court is not persuaded by Taylor's argument. Taylor does not dispute that Taylor's health plan and ESOP are ERISA-qualified plans or that both plans require the filing of a claim for benefits, a decision from the plan administrator, and the exhaustion of plan appeal procedures as a prerequisite to filing a federal court action under the plans. And Taylor does not dispute that he did not file a claim under either plan. Taylor had not directed this Court to any facts or evidence in the record or any authority to support his contention that he is not required to exhaust his administrative remedies under the ESOP plan until the term of his Sales Representative Employment Agreement has been decided. Instead, Taylor offers only attorney argument. Unsubstantiated attorney argument is insufficient to survive a motion for summary judgment. *Scherer v. Rockwell Int'l Corp.,* 975 F.2d 356, 361 (7th Cir. 1992). *See also Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) (affirming summary

judgment because "[t]here must be sufficient substance, other than attorney argument, to show that the issue requires trial.").

Because Taylor failed to exhaust, or even attempt to exhaust, his contractual and administrative remedies under both ERISA-qualified plans and because exhaustion would not be futile, the Court grants the Defendant's motion for summary judgment against Taylor in his claim for $77,189.02 for lost benefits.

VIII.  Conclusion

For the foregoing reasons, the Defendant's Motion to Strike (Docket No. 34) and Motion to Strike Plaintiff's Surreply (Docket No. 38) are **GRANTED**.  The Defendant's Motion for Summary Judgment (Docket No. 14) is also **GRANTED** in its entirety.  Accordingly, the Clerk is ordered to dismiss this case with prejudice.  The parties are ordered to bear their own costs.

**SO ORDERED.**

**DATED: June 6, 2007**

                                                  **S/ ALLEN SHARP**
                                                  **ALLEN SHARP, JUDGE**
                                                  **UNITED STATES DISTRICT COURT**